THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Debora Findley, Respondent,
 v.
 Randy J. Findley, Appellant.
 
 
 

Appeal From Beaufort County
 Judy C. Bridges, Family Court Judge
Unpublished Opinion No.  2007-UP-382
Submitted September 1, 2007  Filed
 September 20, 2007
AFFIRMED

 
 
 
 Sally G. Calhoun, of Beaufort, for Appellant.
 Peter L. Fuge, of Beaufort, for Respondent.
 
 
 

PER CURIAM: 
 This is an appeal of certain provisions in a divorce decree.  Randy Findley
 (Husband) alleges error in the family courts decisions on child support,
 equitable distribution, alimony, and attorneys fees.  We affirm.[1]
FACTS
The
 parties married on May 5, 1995.  They have a daughter, who was born
 December 26, 1995.  Debora Findley (Wife) has full custody of another daughter
 from a previous marriage. 
The
 parties initially lived in Wifes house in Alabama.  They later purchased
 property on which they built a home and rented Wifes house to Wifes brother. 
 While they were still in Alabama, Husband filed for divorce; however, the
 parties later reconciled and moved to South Carolina. 
Husband
 and Wife began living separate and apart on or about February 2, 2003.  On May
 16, 2003, Wife commenced this action by filing a summons and complaint for
 separate maintenance and support, custody of the parties child, child support,
 alimony, equitable distribution, attorneys fees, and other relief.  On June
 12, 2003, Husband filed an answer and counterclaim in which he requested, among
 other relief, a divorce on the ground of habitual drunkenness, custody and
 child support, equitable distribution, and attorneys fees.
Pursuant
 to motions for temporary relief filed by both parties, the family court held a
 hearing on July 21, 2003, and issued a temporary order on August 10, 2003,
 granting Wife custody of the parties child with visitation to Husband and
 directing Husband to pay alimony of $750.00 per month, child support of $830.00
 per month, and $1,500.00 toward Wifes attorneys fees.  Husband
 unsuccessfully moved for reconsideration of the temporary order.  Following the
 denial of his motion for reconsideration of the temporary order, Husband
 retained his present counsel and unsuccessfully moved to reduce child support
 and eliminate his alimony obligation.[2] 
 
The final hearing took place on August 4,
 2004.  On November 16, 2004, the family court filed a final order in the matter
 (1) granting both parties a divorce on the ground of one years continuous
 separation, (2) granting Wife custody of the parties child with visitation to
 Husband, (3) continuing the terms of the temporary order in full force and
 effect until the sale of the former marital home, (4) directing Husband to pay
 child support of $788.00 per month and alimony of $300.00 per month beginning
 the first day of the month after the sale of the marital residence and
 continuing on a monthly basis thereafter, (5) directing Wife and provide health
 insurance on the parties child and instructing the parties as to how to divide
 the childs uncovered medical expenses, (6) dividing the marital assets and
 providing certain instructions as to how a division was to be effected, and (7)
 directing Husband to pay $5,000.00 to Wifes attorney.[3]
On or
 about November 17, 2004, Husband moved for reconsideration.  On December 1,
 2004, Husband filed an amended motion for reconsideration in which he
 challenged (1) the grant of certain real property to Wife, (2) the inclusion of
 certain allegedly non-marital items in his share of the marital property, (3)
 the valuation of certain items awarded to Wife in the equitable distribution,
 (4) the award of certain items to him for which he had no use and the valuation
 of these items as determined by the family court, (5) certain provisions
 concerning custody, visitation, and child support, (6) the attorneys fees
 award, and (7) the alimony award.  On December 8, 2004, the family court held a
 hearing on the motions.  On January 28, 2005, the family court signed an order
 amending the divorce decree with regard to certain portions of the equitable
 division, visitation, and child support and denying the remaining issues that
 Husband raised in his motions.  The order was filed on February 10, 2005, and
 Husband filed his notice of appeal on March 2, 2005.
STANDARD OF
 REVIEW
In appeals from the family court, an
 appellate court has the authority to find the facts in accordance with its own
 view of the preponderance of the evidence.  Wooten v. Wooten, 364 S.C.
 532, 540, 615 S.E.2d 98, 102 (2005) (citing Rutherford v. Rutherford,
 307 S.C. 199, 414 S.E.2d 157 (1992) and Owens v. Owens, 320 S.C. 543,
 466 S.E.2d 373 (Ct. App. 1996)).  This broad scope of review does not,
 however, require the appellate court to disregard the findings of the family
 court.  Id. (citing Stevenson v. Stevenson, 276 S.C. 475, 279
 S.E.2d 616 (1981)).  Neither is the appellate court required to ignore the
 fact that the family court, who saw and heard the witnesses, was in a better
 position to evaluate their credibility and assign comparative weight to their
 testimony.  Id. (citing Cherry Thomasson, 276 S.C. 524, 280
 S.E.2d 541 (1981)).  Moreover, when an
 appellate court chooses to find facts in accordance with its own view of the
 evidence, the court must state distinctly its findings of fact and the reason
 for its decision.  Dearybury v. Dearybury, 351 S.C. 278,
 283, 569 S.E.2d 367, 369 (2002) (citing Rule 220(b)(1), SCACR).
LAW/ANALYSIS
1.  Husband first
 argues the family court, when computing child support, erred in finding medical
 and dental insurance premiums paid by Wife that were attributable to coverage
 of their child totaled $120.00.  We agree the family courts initial
 calculations were in error for this reason; however, it appears from the order
 amending the decree the court made the appropriate adjustment.
On her
 child support worksheet, Wife indicated the portion of her monthly health
 insurance premium covering children only was $120.00.  At trial, however,
 Wife admitted on cross examination this amount covered not only the parties
 minor child, but also Wifes daughter from her prior marriage as well as Wife
 herself.  Wife attempted to justify her right to claim the entire amount for
 the parties child by stating (1) although her older child was on her medical
 policy, that child had health insurance provided by her father; and (2)
 different premiums would be assessed depending on whether the insured was a
 single person, a person with a spouse, or a person with a family. 
Under
 the South Carolina Child Support Guidelines, the family court should consider
 provisions for adequate health insurance coverage for children in every child
 support order.  S.C. Code Ann. Regs.114-4720(E) (1992).  The guidelines
 further provide the portion of the health insurance which covers the children
 is the only expense that should be added.  Id. 
As
 Husband noted in his brief, the family court appeared to dismiss his argument
 that the amount Wife maintained she was paying actually covered, in addition to
 the parties child, Wifes older daughter and Wife herself.  Nevertheless, in
 the order issued pursuant to his motion, the family court, after referencing
 the previous final child support award of $788.00 per month, ruled that
 [u]sing revised child support calculations, . . . [Husband] shall commence
 child support payments in the amount of $733.00 per month and further noted
 that, regarding child support, the divorce decree was amended to conform with
 my findings of fact set forth hereinabove and [Husband] shall pay child support
 on a monthly basis . . . of $733.00 per month.  This revised award reflects
 the amount Husband claims should be allotted to insurance coverage for the
 parties child.[4] 
 Although the family court appeared to reject Husbands position during the
 hearing on his post-trial motion, it is evident from the written order that the
 court ultimately accepted his argument and was within its right to do so.  See Christy v. Christy, 354 S.C. 203, 206, 580 S.E.2d 44, 446 (2003) ( Until the paper has been
 delivered by the judge to the clerk of court, to be filed by him as an order in
 the case, it is subject to the control of the judge, and may be withdrawn at
 any time before such delivery. ) (quoting Archer v. Long, 46 S.C. 292,
 295, 24 S.E. 83, 84 (1896)).
2.  Husband next
 argues the family court abused its discretion in basing child support on Wifes
 claim that childcare costs for the parties child came to $370.00 per month. 
 We disagree.
Wife noted
 on her financial declaration that her gross monthly childcare costs were
 $370.00 and used the same figure on her child support worksheet.  She
 gave consistent testimony on direct examination about this matter.  On cross
 examination, however, she acknowledged her childcare costs for the prior year,
 as reflected on her most recent federal income tax return, averaged to only
 $177.50 per month, suggesting a difference in excess of $1,500.00 per year
 between her childcare costs for the year during which the divorce hearing took
 place and those for the prior year. 
In his
 brief, Husbands sole argument is that it defies common sense to believe the
 childcare net of tax credit had increased $1,500 only one year for after school
 and summer childcare.  In our view, however, the alleged discrepancy only goes
 to the weight of the evidence and is insufficient reason for this Court to hold
 the family court made an incorrect finding regarding work-related childcare
 costs.  As Wife notes in her brief, the sole challenge at trial to her evidence
 regarding childcare costs was a brief question from Husbands attorney
 regarding her 2003 tax return.  Neither party proffered any further testimony or
 evidence concerning work-related childcare costs.  We therefore hold the family
 court based its decision on the evidence presented and acted within its
 discretion in doing so.[5] 
 In so holding, we note Husband should have been able to procure pertinent evidence
 from the childs caregivers if he considered Wifes figures suspect and the
 record does not suggest that he even attempted to do this.
3.  Husband next
 argues the family court abused its discretion in adopting the lowest suggested
 sales price in the comparative market analysis of the marital home rather than
 the median value suggested by the analysis.  In support of this argument,
 Husband further notes the analysis was eight months old at the time of trial
 and therefore artificially low in a rising real estate market.  We reject these
 contentions.
Wife testified the
 market analysis she submitted into evidence was the highest of three market
 analyses conducted on the house.  Moreover, Husband had ample opportunity to
 seek his own appraisal and, although he filed a motion to have another
 appraisal, he never followed through with it.  Based on the evidence before us,
 we find the family courts determination of the value of the marital residence
 was within its discretion.  See Noll v. Noll, 297 S.C. 190, 194,
 375 S.E.2d 338, 340-41 (Ct. App. 1988) (In the absence
 of contrary evidence, the court should accept the value the
 parties assign to a marital asset.).
4.  Husband next
 complains the family court should not have required him to continue paying
 child support and alimony at the levels set by the temporary order for an
 additional thirty days given to Wife to refinance the marital home and buy out
 Husbands equity.  In support of this argument, Husband argues Wife had ample
 time before the hearing to arrange refinancing and admitted she had initially
 received approval without relying on spousal support.  In his reply brief,
 Husband further argues the alleged error was compounded by the fact that Wifes
 attorney delayed submission of the final order for three months, thus enabling
 her to receive four months of child and spousal support at the higher levels.[6]  We find no reversible error.  Husband
 should have raised these concerns in his post-trial motion to enable the family
 court to address them; however, this he failed to do.  Because, therefore, the
 family court did not have the opportunity to rule on this issue, we hold it was
 not preserved for our review.  See Noisette v. Ismail, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding the court of appeals improperly addressed an issue that the
 circuit court did not explicitly rule on when the appellant did not raise the
 issue in a motion to alter or amend).
5.  Husband next
 submits the alimony awarded to Wife should be reversed in view of (1) Wifes
 misconduct during the marriage, (2) Wifes level of education, (3) the
 equitable distribution Wife received in the divorce, (4) Wifes contributions
 to the marriage, (5) the length of the marriage, and (6) the allegation that,
 when Wifes child support was considered, Wifehad more income than did Husband.[7]  We find no abuse of discretion.  See Craig v. Craig, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005) (An award
 of alimony rests within the sound discretion of the family court and will not
 be disturbed absent an abuse of discretion.).
Although
 Wife had completed more schooling than did Husband and was working as an
 insurance agent at the time of the divorce hearing, it was undisputed that she
 consistently earned less than he did throughout the marriage.  Moreover, we
 agree with the family court that any support Wife was receiving for her older
 child should not be considered as income belonging to her for purposes of
 determining her eligibility for alimony because, as the family court noted,
 [s]he has the obligation to contribute, as well as the father.  Similar logic
 can be applied to the child support awarded for the child of the marriage.  As
 to Wifes alleged misconduct, we find it significant that the family court
 expressly found the fault allegations set forth in the parties pleadings was
 not supported by sufficient evidence and chose instead to grant the divorce to
 both parties on the ground of a one-year separation.  Although there may reason
 to differ with the weight the family court gave to each of the statutory
 factors for alimony, the concerns Husband has raised in this appeal do not
 warrant the reduction or setting aside of the alimony award.  See Doe
 v. Doe, 324 S.C. 492, 504-05, 478 S.E.2d 854, 860 (Ct. App. 1996) (noting
 [n]o one factor is considered dispositive in determining an award of spousal
 support).
6.  Husband next argues the
 attorneys fees award to Wife should be reduced or eliminated altogether,
 citing among other reasons (1) fees assessed him after the temporary hearing, (2)
 Wifes ability to pay her own attorney as compared with his own financial
 circumstances, (3) the fact that Husband did not pursue his counterclaim for
 custody, (4) deficiencies in the representation provided by Wifes attorney,
 and (5) dilatory tactics allegedly used by Wifes attorney to prolong the
 period that Husband had to pay higher levels of child and spousal support.  We
 find no abuse of discretion based on any of these grounds to justify reversing
 or modifying the attorneys fees awarded to Wife.  In our view, the family
 court adequately considered the requisite factors under Glasscock v.
 Glasscock, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991), in determining
 the amount to award Wife as attorneys fees.  In particular, we note the
 difficulty of the case was exacerbated by numerous motions filed by Husband
 while the lawsuit was pending, thus increasing the time Wifes attorney had to
 devote to the matter.  Moreover, Wife was the prevailing party on most, if not
 all, matters at trial.   
7.  We reject Husbands
 contention that the family court should have awarded him a special equity in
 Wifes pre-marital home.  Contrary to Husbands argument that he presented
 uncontroverted testimony that marital funds were used to pay the mortgage on
 the home as well as for a new roof, a front porch, a carport, new carpeting,
 and a heating system, Wife testified that she made the mortgage payments, no
 new carpet was installed, no new porch was built, and the new heating was not a
 heating system but simply propane models that hung on the wall.  As to the
 roof, Wife testified her brother, who worked as a roofer, installed a partial
 new roof after a hail storm.  Because there was conflicting testimony regarding
 Husbands entitlement to a special equity in Wifes pre-marital residence, we
 defer to the family courts decision on this matter.  See Murdock v.
 Murdock, 338 S.C. 322, 328, 526 S.E.2d 241, 245 (Ct. App. 1999) (noting
 that, although the court of appeals has jurisdiction in family law cases to
 find facts according to its own view of the evidence, it is not required to
 disregard the family courts findings or to ignore the fact that the family
 court judge, who saw and heard the witnesses, was in a better position to
 evaluate their testimony).
8.  We reject Husbands
 argument that the family court abused its discretion in allegedly adopting
 wholesale personal property valuations that Wife or her attorney allegedly hurriedly
 jotted on [Husbands] marital assets addendum during a break at trial. No
 proof of value was offered by either party other than their opinions regarding
 the worth of the various items.  Moreover, in support of his position, Husband
 alleges on appeal that Wifes valuations were low-balled without directing
 our attention to any evidence showing how they were incorrect.  Without any
 specific assignments of error, we see no reason to disturb the family courts
 assessments of worth for the various items at issue.  
9.  Finally,
 Husband alleges the family court erred in awarding him various personal effects
 for which he allegedly had no use.  He further maintains the error is
 compounded by Wifes claim that she did not to know where the items were
 located, the fact that he was presently living out-of-state in a rented room,
 and his allegation that the family court gave the items artificially high
 values.  We find no merit to these assertions.
According
 to Husbands brief, the items at issue consisted of a rug, a plant, a
 non-working computer, discs, a VHS player, an antique curio cabinet, a floral
 picture, a telephone, carving knives, pots, pans, and corning ware.  The only
 item of any significant worth or bulk was the curio cabinet, which the family
 court assessed at $500.00.  The family court specifically found this item was a
 non-marital asset and Husband does not appeal this finding; therefore, we
 affirm the decision to award it in-kind to Husband.  See S.C. Code Ann.
 § 20-7-473 (Supp. 2006) (The [family] court does not have jurisdiction or
 authority to apportion nonmarital property.).
Several of the items that Husband claims he received in the
 equitable division but did not want were assigned no value at all; these
 consisted of the rug, the computer and disks, the telephone and the pots and
 pans.  Because these items were assessed a zero value, Husbands claim
 that they resulted in Wifes receiving a monetary offset for them lacks merit.
  
The total value assigned by the family court to the remaining
 items in question was $87.50.  Ironically, however, in his post-trial motion,
 Husband requested not only that these items be awarded in-kind to Wife, he
 alleged they had been grossly undervalued when they were included in the inventory
 of property that the family court awarded to him.  Under these circumstances,
 we are at a loss to see how Husband can now complain the family court assigned
 inflated values to these items.
AFFIRMED.
HEARN, C.J.,
 ANDERSON and THOMAS, JJ., concur.

[1]  We decide this case without oral argument pursuant
 to Rule 215, SCACR.
[2]  The record contains a rule to show cause against
 Husband issued April 19, 2004, after the denial of Husbands motion to reduce
 child support and eliminate alimony.  In Wifes verified petition, she alleges
 Husband had failed to pay these obligations in a timely manner and was in arrears. 
 Although the rule to show cause noted a hearing was scheduled for June 15,
 2004, the record does not indicate the outcome of the hearing.
[3]  The final order reproduced in the record appears to
 stop in mid-sentence and the summary given above is based on the portion that
 was made available.  The clerks file has a complete copy of the order; all
 that is missing is the final page, which has only about one-half page of text
 and information that does not affect this appeal.
[4]  In addition to the dispute regarding the cost of
 medical insurance on the parties child, Husband alleged in his post-trial
 motion that Wife underreported her income and presented a grossly inflated
 figure for the cost of her work-related childcare.  From our reading of the
 written order issued by the family court after it heard the motion, it appears
 the family court accepted the figures that Husband suggested correctly
 reflected Wifes monthly gross income and health insurance premiums for the
 parties child and rejected the figure he proposed for work-related childcare. 
 We calculated child support using the worksheet that Husband included as an
 exhibit with his motion, which appears on page 93 of the record on appeal.  In
 our calculations, we used the revised figure for Wifes gross monthly income
 and the figure Husband claimed reflected the correct cost of health insurance
 premiums for the parties child; however, we used the figure for work-related
 childcare that the family court had applied when initially setting child
 support instead of the figure Husband suggested on the worksheet.  Using
 the revised figures suggested by Husband for both Wifes income and health
 insurance premiums for the child, we computed child support under the
 guidelines to be $732.09 per month, which deviates from the family courts
 calculation by less than $1.00 per month. 
[5]  On her financial declaration, Wife notes the $370.00
 per month she was claiming for childcare includes dance & swim lessons. 
 The costs of these lessons could possibly account for the large discrepancy about
 which Husband was complaining; however, we have found nothing in the record
 indicating either party advanced this theory at trial.
[6]  As noted in the facts, the temporary order set
 alimony and child support at $750.00 per month and $830.00 per month,
 respectively.  In the final order, the family court set alimony at $300.00 per
 month and child support at $788.00 per month, but later reduced child support
 to $733.00 per month.
[7]  During trial, Husband alleged that Wife was unfaithful and extravagant.  He further maintained she abused alcohol and did not contribute financially
 to the marriage in a level befitting her education and other circumstances.