## TATE, MULLER & WITTICHEN v. PEGUES.

An agent to sell commercial fertilizers, when called upon to account to his principal for so much as was retained by himself (the agent) for his own use, and for money collected from his sales to others, cannot relieve himself of liability upon the ground that the sacks containing the fertilizers were not tagged as required by law.

Before COTHRAN, J., Marlboro, September, 1886.

The opinion fully states the case.

*Messrs. Prince & Rankin,* for appellants.

*Mr. Knox Livingston,* contra.

April 11, 1888.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    The plaintiffs, of Baltimore, Maryland, and defendant, of Marlboro County, of this State, entered into a contract (1882), whereby the defendant became the agent of the plaintiffs for the sale of fertilizers on the terms and at the prices stipulated.    The action was brought by the plaintiffs against the defendant, alleging that in the spring of 1883 a large quantity of fertilizers was consigned to the defendant for sale; that the defendant had disposed of a considerable portion thereof, for which he had never accounted, amounting in value to about $218.13, and had appropriated to his own use another portion, worth $269, making his aggregate indebtedness to the plaintiffs the sum of $487.78.    The defendant answered that the fertilizers were delivered to him in sacks, which were not labelled, stamped, or tagged; also that they were worthless and of no value, and proved of no value to the crops upon which they were used, and on

this account he failed to collect the amounts for which they were sold; and also a general denial of the allegations of the complaint.

The plaintiffs put up the defendant as a witness, and he proved the agency, the contract, and the delivery to him of the fertilizers charged, the amount he had retained and used himself, and what he had sold and not accounted for. On his cross-examination he stated that the fertilizers came to him in bags, which "were branded as usual. They had 'Esunvalda' or 'Equitable' in large letters and the different ingredients printed on them, but there was no privilege tag from the Agricultural Department on the bags." He knew what it was, however.

Upon this testimony the defendant moved for a non-suit, which was granted. The plaintiffs appeal to this court upon the following grounds :

"1. Because the defendant, being the agent of the plaintiffs in this State, and called to account, the plaintiffs being residents of another State, it was error to allow him to take advantage of any alleged omission of his principals to comply with the law of this State in regard to the business he was prosecuting for them.

"2. As agent in this State for principals in another State, the court erred in not holding that the defendant was himself bound to attach the tags or 'other evidence' that the privilege tax had been paid, if such evidence was wanting, and that he could not take advantage of his own dereliction.

"3. The burden of proof being on the defendant to establish every material fact necessary to establish his defence, he should have been required to show, not only that the sacks were not 'tagged,' but that there was no other evidence that the privilege tax had been paid. On the contrary, the defendant testified that the 'sacks were branded as usual and had the analysis on them,' and there was error in not submitting it to the jury.

"4. It was error to allow the agent to controvert the authority of his principals in a transaction about which he was called to settle with them.

"5. It was error to dismiss the complaint on the ground that the contract in this case was illegal on the part of the plaintiffs.

"6. It was error to dismiss the complaint on the ground that the contract was not binding on the parties to it.

"7. It was error to allow the agent to retain to his own use money or property which he received for his principals.

"8. It was error to refuse to enforce the contract, when the agent in its prosecution actually received money and property belonging to his principals, which he refused to turn over to them on the ground of the illegality of the contract.

"9. The plaintiffs having made a *prima facie* case, the court erred in withholding it from the jury."

We do not think this case is analogous to that of *McConnell* v. *Kitchens*, 20 *S. C.*, 438. That was an action on a note given for fertilizers, as to which the "constituent elements" were not given, and it was held under our laws to protect the farming interest from imposition in the purchase and use of commercial fertilizers, that "the contract of sale was void." But here the contract of agency was certainly not unlawful, indeed, was not a contract of sale at all. But as the case will have to go back, it will not be necessary, and might be improper now, to consider the question whether there was or was not in this case a substantial compliance with the law, as the sacks were branded in large letters, giving the name and chemical analysis of the contents. It is enough to say that this was an agency to sell fertilizers, which, in itself, was not illegal. The defendant received the property of the plaintiffs under an agreement to sell it for them, and he cannot now refuse to account to them, upon the allegation that there was a law in the State forbidding the sale, especially as he appropriated a portion of the property so received to his own use. *Andersons* v. *Moncrieff*, 3 *DeSaus.*, 125; *Owen* v. *Davis*, 1 *Bail.*, 315; *McConnell* v. *Kitchens*, 20 *S. C.*, 430; *Smith Cont.*, 151.

The judgment of this court is, that the non-suit ordered on the Circuit be set aside, and the case remanded to the Circuit Court for a new trial.